1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL GIOSSO,

     Plaintiff,

  v.

OWENS CORNING,

     Defendant.

_____/

No. C 09-05834 CRB

**MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

     This is a lawsuit between a contractor and his former employer.  Plaintiff contractor, Michael Giosso, claims that his former employer, Defendant Owens Corning, wrongfully used his contractor's license beyond the period to which he agreed.  Giosso alleges that, not only was Owens Corning's use of his license wrongful, but he became the subject of a customer complaint and associated disciplinary action because of Owens Corning.

     Giosso sets forth causes of action for (1) indemnification of legal expenses incurred defending the customer complaint and associated disciplinary action under California Labor Code Section 2802; (2) negligence based on violation of Labor Code Section 2802; (3) unjust enrichment; (4) negligence with respect to the defense of the customer complaint and associated disciplinary action; and (5) conversion.  This Court is called upon to determine whether there are any triable disputes of material fact with respect to each cause of action other than the one for unjust enrichment, which Giosso concedes is not viable.

United States District Court
For the Northern District of California

There are genuine disputes of material fact with respect to whether Owens Corning had permission to use Giosso's license for the time period that it did. Likewise, there are genuine disputes of material fact as to whether Owens Corning should indemnify Giosso for some or all of the legal fees he incurred defending the customer complaint and disciplinary proceeding. Accordingly, Giosso's section 2802, negligent defense, and conversion claims, all survive Owens Corning's motion, at least in part.

# I.     BACKGROUND[1]

In 1991, Giosso founded a company called HomeFinishes. Giosso Decl. (dkt. 40) ¶ 2-3. HomeFinishes offered construction services, including a painting division. Id. HomeFinishes started small but grew to employ 750 people and bring in annual revenue of $40,000,000. Id.

In October 2002, Giosso sold HomeFinishes to Owens Corning for $10,000,000. Id. ¶ 5; Giosso Depo. Tr. (dkt. 35-2) at 43:16-45:10. About one week before the sale, Owens Corning, via Vice President and General Manager of HOMExperts[2] Chuck Stein, asked Giosso to agree to act temporarily as the Responsible Managing Employee ("RME") for the

---

[1] As this matter comes before the Court on a motion for summary judgment, the undisputed facts are set forth in the light most favorable to Giosso. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Owens Corning asserts that Giosso's Declaration, from which many of these facts are drawn, should be stricken "in its entirety." Reply (dkt. 41) at 2-4. Essentially, Owens Corning argues that Giosso's Declaration is an attempt to create triable issues by contradicting his own prior deposition testimony and unobjectionable documentary evidence. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure of screening out sham issues of fact."); see also Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

A declaration is not inadmissible merely because it is self-serving. Goolsby v. Carrasco, No. 1:09-cv-01650 JLT (PC), 2011 WL 386986 at *4 (E.D. Cal. Feb. 3, 2011) ("Declarations are 'oftentimes . . . 'self serving'-'[a]nd properly so, because otherwise there would be no point in a party submitting them.'") (quoting SEC v. Phan, 500 F.3d 895, 909 (9th Cir. 2007)). Nor, as will be discussed in more detail below, does Giosso's Declaration directly contradict his prior testimony on critical, disputed issues. Owens Corning has certainly identified inconsistencies in Giosso's story, but those inconsistencies go to his credibility, not whether his statements are admissible.

Accordingly, Owens Corning's request to strike Giosso's entire Declaration is DENIED.

[2] HOMExperts was a division of Owens Corning.

2

United States District Court
For the Northern District of California

1   C-33 classification for painting and decorating that would be associated with Owens

2   Corning's contractor's license.  Giosso Decl. (dkt. 40) ¶ 7. Giosso agreed to allow Owens

3   Corning temporary use of his C-33 classification because, without that classification, a

4   significant portion of HomeFinishes's business would have been useless to HOMExperts

5   because Owens Corning lacked the classification necessary to continue HomeFinishes's

6   work.  Id. ¶ 7 ("For the sale of HomeFinishes to be consummated, it was critical to Mr. Stein

7   and HOMExperts\Owens Corning that these contracts be assigned at the time of the sale.").

8   Giosso "agreed to act as the RME until [a different Owens Corning employee] could get a C-

9   33 license. . . . . [and Giosso] expected [the application process to] take[] no more than six

10  months.  [Giosso's] other expectation was that [his] C-33 license would only be used on

11  existing new construction jobs for new home builders."  Giosso Decl. (dkt. 40) ¶ 9.[3]  Giosso

12

13      [3]  Stein was deposed in connection with this lawsuit.  See Stein Depo Tr. (dkt. 38-1).  He had

14  no meaningful recollection as to what understanding Owens Corning reached with Giosso regarding
    Owens Corning's use of Giosso's C-33 classification.

15      Q.      And during the due diligence period, do you remember any
                issues arising regarding either a contractor's license before

16              you actually acquired HomeFinishes?
        A.      I don't recall specifically.

17      Q.      At some point, do you remember speaking with Mr. Giosso
                regarding the use of his or a license prior to the acquisition of

18              HomeFinishes?
        A.      Prior to the Acquisition, I don't recall.

19      Q.      Do you remember anything that happened afterward?
        A.      I know that we used his contractor license.

20

21      . . . .

22      Q.      What is it you recall regarding this license of Mr. Giosso's?
        A.      I know we needed a license to do work in California, and I

23              know he had a license to do work in California. . . . . I know
                we used his license to do work in California.

24      . . . .

25      Q.      Did you ever agree to compensate Mr. Giosso for the use of
                his license?

26      A.      I don't recall.
        Q.      Was there any time limit regarding the use of Mr. Giosso's

27              license?
        A.      I don't recall.

28

        (continued . . . .)

3

**United States District Court**
For the Northern District of California

was then hired by Owens Corning as the RME for the C-33 classification of Owen's

Corning's California contractor's license number 784023.  First Amended Complaint

("FAC") (dkt. 27) ¶ 6; Request for Judicial Notice ("RJN") (dkt. 36-2).

According to Giosso, it is the general practice in the construction industry to

compensate someone for the use of his classification.  Giosso Decl. (dkt. 40) ¶ 10.  Typically,

such compensation ranges from 1% to 5% of the gross revenue generated from the

classification's use.  Id.  Only because use of his classification was going to be temporary did

Giosso not negotiate or receive compensation of any kind.  Id. ¶ 11.  Giosso never agreed to

Owens Corning's indefinite use of his classification.  Id. ¶ 40.  Had he known that Owens

Corning was going to use the classification beyond completion of "the existing painting

contracts that were assigned to HOMExperts [in the sale of HomeFinishes]," he "would have

actively negotiated the terms of use and indemnification."[4]  Id.

---

. . . .

> Q.    Do you remember what kind of license it was?
> A.    I don't recall.

. . . .

> Q.    When you hired Mr. Giosso, do you remember whether or not
>        his license is reflected in any of the employment contracts
>        that you and he may have negotiated?
> A.    I don't recall.

Id. at 10:18-11:6; 11:13-11:17; 13:4-13:9; 13:14-13:16; 16:6-16:10.  Nor, apparently, is the use of Giosso's C-33 classification reflected in any employment document.  Giosso Decl. (dkt. 40) ¶ 12.  In addition, Owens Corning has represented to Giosso that no Owens Corning employee has non-privileged knowledge regarding the C-33 classification issue.  See Mar. 9, 2011 Ltr. from Guite to Motta (dkt. 38-11) ("[T]here are no Owens Corning employees with knowledge regarding information or statements related to use of the C-33 classification.").

[4] Giosso admits to signing an Additional Classification associating him as the RME for the C-33 classification in August 2003, some 10 months after he claims he put a temporal limitation on Owens Corning's use of the classification.  Giosso Decl. (dkt. 40) ¶ 13.  Further, according to Owens Corning, in 2004, Giosso submitted a Renewal Application in connection with Owen's Corning's 784023 license.  That Renewal Application included Giosso's C-33 classification.  Giosso Depo Tr. (dkt. 35-2) at 126:4-24, 127:15-22 and Ex. 11; Giosso Depo. Tr. (dkt. 35-1) at 42:12-43:20.  If Giosso realized the nature of the Renewal Application and knowingly signed it, such fact significantly undercuts Giosso's assertion that he never agreed to allow Owens Corning to use his C-33 classification for an extended period of time.  In his testimony regarding the Renewal Application, though, Giosso asserts that he did not

(continued . . . .)

1    Giosso left Owens Corning's employ in August 2006, resigning to take a position with

2  another company.  Giosso Decl. (dkt. 40) ¶ 15.  The parting was not amicable.  Id. ¶ 16

3  ("When I announced my resignation from Owens Corning I was escorted out of the office the

4  next day and provided no opportunity to transition . . . .").

5    Over a year after Giosso left, in October 2007, he became aware of a customer

6  complaint filed against HOMExperts with the Contractors State License Board ("CSLB")

7  after receiving correspondence from the California Attorney General's Office.  Id. ¶ 20.

8  Although the homeowner's complaint did not relate to any C-33 related work and was filed

9  after Giosso left Owens Corning, he was a part of the action because his C-33 classification

10  was associated with Owens Corning's 784023 license.  See Mot. for Summ. J. (dkt. 34) at 3.

11  Owens Corning never told Giosso about the complaint.  Giosso Decl. (dkt. 40) ¶ 23.

12    Giosso attempted to contact Owens Corning once he learned of the customers'

13  complaint but was unable to do so.  Id. ¶ 25.  Giosso then contacted his lawyer, Daniel

14  Bernhard.  Id.  Bernhard eventually made contact with Owens Corning and was directed to

15  ──────────────

16  understand the Renewal Application to include his C-33 classification and does not even remember
signing the document.

17    Q.    Mr. Giosso, we have just handed you what has been marked
18          as Exhibit 11 to your deposition.  Do you recognize this
          document?
19    A.    I do not.
      Q.    Looking at the final line of the document, the printed name is
20          Michael John Giosso.  Is the signature to your left your
          signature?
21    A.    It could be.
      Q.    Do you recall signing this renewal on or about August of
22          2004?
      A.    I do not.
23    . . . .

24    Q.    Looking back at Exhibit 11, is there any reason for you to
          think that is not your signature on Exhibit 11?
25    A.    I can't tell you whether it is or isn't, only that I might have
          thought I was signing something on the license.  My
26          understanding is I was not on the license.  McCord was the
          license holder.

27  Id.  Thus, whether Giosso even signed the Renewal Application is disputed.  See also Giosso Decl. (dkt.
28  40) ¶ 13 ("I do not recognize my signature on the renewal application dated August 9, 2004[.]").  In any
case, it is certainly disputed whether any such signature, even if it is Giosso's, reflects Giosso's
understanding that his C-33 classification was being renewed for Owens Corning's use.

1   the attention of Owens Corning's counsel, Robert Berrigan.  Id.  Berrigan told Bernhard that

2   he was "in settlement discussions and that this issue would be resolved shortly."  Id.

3   However, "Mr. Berrigan did not offer nor did Owens Corning offer to represent [Giosso's]

4   interests at this time. [Giosso and his counsel] were only assured that [Owens Corning was]

5   working with the [disgruntled customers] on a settlement."  Id.

6        In late January 2008, the Attorney General, on behalf of the CSLB, filed a formal

7   accusation against Giosso, among others.[5]  Id.  Giosso again contacted his attorney, who

8   again contacted Berrigan.  Id.  Berrigan again reiterated that "that they were close to a

9   settlement and that [Giosso] would be included in the settlement agreement. . . . .  Mr.

10  Berrigan never inquired with [Giosso] in regards to [his] interests or thoughts in the matter,

11  the only information [Giosso] received . . . was that Owens would settle this and that [he]

12  would be part of the release."  Id.

13       In February 2008, Owens Corning reached a comprehensive settlement with the

14  customers.  Id. ¶ 31.  Giosso was a party to and agreed to that settlement, which was

15  negotiated by Berrigan.   Id.; Giosso Depo. Tr. (dkt. 35-2) at 67:4-70:3.

16       Even though the customers withdrew their complaint as part of the settlement, the

17  CSLB nevertheless continued to pursue the matter.  Giosso Decl. (dkt. 40) ¶ 31.  Owens

18  Corning, via Berrigan, then reached a settlement with the CSLB.  Under that settlement, the

19  CSLB dismissed the accusation against Owens Corning's licenses in exchange for (1) a two-

20  year probationary period on the affected licenses and (2) a $25,000 surety bond for licenses

21  that would continue to be used.  Id. ¶ 32; Giosso Depo. Tr. (dkt. 35-2) at 78:4-78:12, 81:21-

22  82:2, 82:6-13.  Although Giosso was made aware of the CSLB settlement proposal, he (1)

23  did not believe that Berrigan was acting on his behalf when the CSLB settlement was

24

25       [5]  In Giosso's view, Owens Corning badly mishandled the customers' complaint and allowed
     a matter "that could have been easily resolved" to balloon into the formal accusation that eventually
26   resulted.  Id. ¶ 26.  Although Owens Corning was made aware of the customers' complaint as early as
     May 2006 and informed the CSLB that it would resolve the issue in November 2006, it closed
27   HOMExperts in January 2007 and stopped actively working to resolve the complaint.  Id. ¶ 27; see also
     Motta Decl. (dkt. 38-7) (Nov. 20, 2006 Letter from HOMExperts to CSLB Investigator) (setting forth
28   "the actions we will undertake to resolve [the customers' complaint].").  That resulted in the CSLB
     filing a formal accusation with the Attorney General's Office against every license associated with
     Owens Corning, including Giosso's C-33 classification.  Id. ¶ 28.

1    negotiated, (2) was never asked to or consented to Berrigan's representation, and (3) never

2    waived any potential conflict of interest in Berrigan's representation of both Owens Corning

3    and himself.  Giosso Decl. (dkt. 40) ¶ 42.

4         Giosso declined to agree to the proposed CSLB settlement.  Giosso Depo Tr. (dkt. 35-

5    2) at 78:8-78:12 ("Q. It is my understanding that you chose not to accept the proposal that

6    was provided by the CSLB to all the respondents, meaning you and Mr. McCord and Owens

7    Corning; is that correct?  A. That's correct."); Giosso Decl. (dkt. 40) ¶ 33 ("I was and remain

8    steadfast that I did nothing wrong; I was innocent of any wrongdoing.  I was left with no

9    choice but to fight the accusation.").  Instead, Giosso chose to litigate the accusation to

10   resolution.  See id.  The ultimate result Giosso obtained was the same as the one Giosso

11   rejected at the outset: "I was [] required to post a $25,000 disciplinary bond on . . . and I was

12   out on disciplinary probation for a period of two years."  Giosso Decl. (dkt. 40) ¶ 44; see also

13   Giosso Depo. Tr. (dkt. 35-2) at 82:14-82:17 ("Q.  How, if at all, did [the] resolution [of the

14   CSLB matter] differ from the ultimate resolution that you achieve[d] with the CSLB?  A.  It

15   was exact[ly] the same.").

                                    * * *

17        Giosso filed suit against Owens Corning on October 2, 2009 in Alameda Superior

18   Court.  Notice of Removal (dkt. 1) ¶ 1.  Owens Corning removed the action to this Court on

19   December 14, 2009.  Id.  Owens Corning filed its Motion for Summary Judgment (dkt. 34)

20   on March 25, 2011.

21   **II.    LEGAL STANDARD**

22        Summary judgment is appropriate where "the pleadings, depositions, answers to

23   interrogatories and admissions on file, together with the affidavits, if any, show that there is

24   no genuine issue of material fact and that the moving party is entitled to judgment as a matter

25   of law."  Fed. R. Civ. P. 56(c).  A principal purpose of the summary judgment procedure is to

26   isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317,

27   323-24 (1986).  The burden is on the moving party to demonstrate that there is no genuine

28   dispute with respect to any material fact and that it is entitled to judgment as a matter of law.

United States District Court
For the Northern District of California

1  Id. at 323.  A genuine issue of fact is one that could reasonably be resolved in favor of the

2  nonmoving party.  Anderson, 477 U.S. at 248.  A dispute is "material" only if it could affect

3  the outcome of the suit under the governing law.  Id. at 248-49.

4       If the moving party does not satisfy its initial burden, the nonmoving party has no

5  obligation to produce anything, and summary judgment must be denied.  Nissan Fire &

6  Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If, on the other hand,

7  the moving party has satisfied its initial burden of production, then the nonmoving party may

8  not rest upon mere allegations or denials of the adverse party's evidence, but instead must

9  produce admissible evidence that shows there is a genuine issue of material fact for trial.  Id.

10 at 1103.  The nonmoving party must "set out 'specific facts showing a genuine issue for

11 trial.'"  Celotex, 477 U.S. at 324-25 (quoting Fed. R. Civ. P. 56(c)).  If the nonmoving party

12 fails to make this showing, the moving party is entitled to judgment as a matter of law.  Id. at

13 323.

14       When deciding a summary judgment motion, a court must view the evidence in the

15 light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

16 Anderson, 477 U.S. at 255.  However, it is not a court's task "to scour the record in search of

17 a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)

18 (internal quotations omitted).  Rather, a court is entitled to rely on the nonmoving party to

19 identity with reasonable particularity the evidence that precludes summary judgment.  See id.

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

III.   **DISCUSSION**

   A.   **Genuine Disputes of Material Fact Preclude Summary Judgment on Giosso's Indemnification Claim Under Labor Code Section 2802**

   Giosso asserts a claim under California Labor Code Section 2802 for indemnification of legal expenses incurred while "defending the CSLB[] Action . . . ."  FAC ¶ 18.[6]  Section 2802 provides in pertinent part as follows:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . .
>
> . . . .
>
> (c) [T]he term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

Cal. Labor Code § 2802.

   The California Appellate Court has set forth seven factors a court should consider in determining whether attorneys' fees incurred by an employee in defending an action are a "necessary expenditure" warranting indemnification by the employer:  (1) whether the employer has already agreed to provide counsel to defend the employee; (2) the competency and experience of counsel provided by the employer; (3) any time constraints requiring the employee to take unilateral action in selecting and hiring counsel; (4) the complexity and difficulty of the litigation against the employee in relation to the ability and capacity of the employer-provided counsel; (5) whether there are any conflicts between the employer and the employee; (6) the past history of the relationship between the employer and the employee; and (7) the nature of any problems arising in the attorney-client relationship and the reasons behind those problems.  Grissom v. Vons Cos., Inc., 1 Cal. App. 4th 52, 58 (1991).

_____

   [6]  In addition to seeking indemnification for legal expenses incurred while defending the CSLB Action, Giosso originally also sought indemnification for losses caused when he was terminated from his subsequent employer, Conxtech.  He has acknowledged that, to the extent the section 2802 claim seeks indemnification for losses caused by his termination from Conxtech, it "shall not survive this motion."  Opp'n to Mot. for Summ. J. (dkt. 37) at 5.  Accordingly, summary judgment is GRANTED in Owens Corning's favor on the Section 2802 claim to the extent premised on a claim for indemnification of losses due to Giosso's termination from Conxtech.  See FAC ¶ 19.

Owens Corning argues that any legal fees Giosso incurred in connection with the CSLB Action were "[un]necessary expenditures or losses" because Owens Corning retained counsel for Giosso, negotiated a release of the customers' complaint, and negotiated a settlement with the CSLB that was identical to the one Giosso obtained after litigating the matter.  Mot. for Summ. J. (dkt. 34) at 5-6.

In support of its argument, Owens Corning relies primarily on <u>Grissom</u>, which noted that:

> It may be, of course, that an employee's expenditure of money on legal costs would be totally unnecessary if his or her employer timely provided competent counsel to defend the employee under circumstances where the counsel is not subject to any conflict of interest between the employer and employee. In such a situation, for the employee to select and then hire his or her own counsel in addition to counsel already being provided free of charge might, depending on all the facts involved, be a gross waste of resources and highly unreasonable.

1 Cal. App. 4th at 58.

But <u>Grissom</u> does not entitle Owens Corning to summary judgment.  Taking the facts in the light most favorable to Giosso, there is a material dispute as to whether Giosso's retention of counsel was a necessary expenditure under the circumstances.

- Owens Corning did not inform Giosso that his license was potentially in peril. Giosso Decl. (dkt. 40) ¶ 20 ("The First time I learned there was a potential action impacting my C-33 license was over a year after I left Owens Corning, when the California Attorney General notified me at my home of a pending accusation . . . ."); ¶ 23 ("I never received notice about this matter from Owens Corning[.]").

- When Giosso finally learned of the action against his license, Owens Corning's counsel, Berrigan, represented to Giosso that Berrigan was working toward settlement with the disgruntled homeowners but "did not offer nor did Owens Corning offer to represent my interests . . . ."  <u>Id.</u> ¶ 25.

- Even though Giosso eventually signed a "Notice of Defense" so that Berrigan "could represent my interests as he negotiated the final release and settlement with the [disgruntled customers], the attorney general, and CSLB" Berrigan "never inquired with me in regards to my interests or thoughts in the matter . . . ."  <u>Id.</u>

- With respect to the ongoing proceedings with the CSLB, after the customers' claim was settled, "[Mr. Berrigan] did not represent me or appear in the CSLB matter on my behalf.  I was never asked to, nor did I consent to Mr. Berrigan's representation.  I never waived any potential conflict of interest."  <u>Id.</u> ¶ 42.

Reviewing the <u>Grissom</u> factors, the foregoing facts present a triable issue as to the reasonableness of Giosso's retention of counsel.  For example, even assuming Owens Corning retained Berrigan to represent Giosso's interests as well as Owens Corning's interests, it never communicated that clearly to Giosso or did not do so timely.  In addition, notwithstanding Owens Corning's assertion to the contrary, <u>see</u> Mot. for Summ. J. (dkt. 34) at 7, there were at least potential conflicts of interest in Berrigan representing both Giosso and Owens Corning that should have been brought to Giosso's attention.  Although, broadly speaking, both Giosso and Owens Corning had a similar interest in obtaining a "favorable settlement," they did not stand in the same position.  Indeed, Giosso had a separate defense in the CSLB Action – that he did not know his license was being used by Owens Corning – unavailable and in large measure adverse to Owens Corning's defenses.  Further, according to Giosso, he and Owens Corning did not part ways amicably.

Nor does the fact that Giosso agreed to the settlement with the customers mean that it was unreasonable for him to have retained his own counsel in the first place.  His counsel presumably reviewed the terms of that settlement to ensure that Giosso's interests were protected.  Finally, whether Giosso's choice to reject the proposed settlement with the CSLB and litigate that matter was a "necessary expenditure" is a jury question as well.  Even though Giosso ultimately achieved the same result negotiated by Berrigan, the stakes for Giosso were of a different sort than for Owens Corning (among other things, Owens Corning was getting out of the business but Giosso was not), and Giosso has raised questions of fact as to whether Berrigan was acting in Giosso's (as opposed to Owens Corning's) interest at all times.  Furthermore, based on his limited interaction with Berrigan, it was not unreasonable, as a matter of law, for Giosso to reject the settlement Berrigan negotiated on the theory that he had a reasonable chance of doing better through litigation.

Accordingly, Owens Corning's Motion for Summary Judgment as to the section 2802 claim is DENIED, except as set forth above.

//

//

11

**B.      Summary Judgment is Granted on the Negligence Claim in Count Two**

Giosso's second cause of action is for negligence based on Owens Corning's duty to defend and indemnify him under section 2802.  FAC (dkt. 27) ¶ 22 ("Owens Corning had a duty to defend and indemnify Plaintiff, pursuant to Labor Code Section 2802.")  As will be discussed in more detail below, Owens Corning did not have a duty to <u>defend</u> Giosso under section 2802.  It may have had a duty to indemnify him, <u>see</u> *supra* III.A, but Giosso does not assert that Owens Corning carried out its duty to indemnify negligently.  Rather, Giosso asserts that Owens Corning did not carry out its duty of indemnification at all.  Indeed, that is the entire point of the section 2802 claim.  Further, Giosso asserts a separate negligence claim in count four in which he challenges the reasonableness of Owens Corning's defense-related conduct.

Accordingly, this Court GRANTS Owens Corning summary judgment on the negligence claim in count two.

**C.      Summary Judgment Is Granted on the Unjust Enrichment Claim**

Giosso has conceded that his unjust enrichment claim "shall not survive [the] motion [for summary judgment]."  Opp'n to Mot. for Summ. J. (dkt. 37) at 5.  Thus, summary judgment is GRANTED in Owens Corning's favor on that claim.

**D.      Disputes of Material Fact Preclude Summary Judgment as to Portions of Giosso's Negligence Claim in Count Four**

Owens Corning moves for summary judgment on Giosso's fourth cause of action for negligence, claiming that (1) it does not owe Giosso any duties and (2) there is no factual basis for the assertion that it breached any duties it might have owed.  Mot. for Summ. J. (dkt. 34) at 12.  Giosso has done enough to survive summary judgment.

Giosso asserts in the FAC that Owens Corning had a duty to (1) "appropriately respond to the investigation and disciplinary action taken by the [CSLB] against [his] C-33 license"; (2) "reasonably respond to the CSLB" and (3) "responsibly manage the disciplinary action."  FAC (dkt. 27) ¶ 33.  He claims that Owens Corning violated those duties in five ways by failing to:  (1) cease work under the C-33 license after Giosso left Owens Corning's employ; (2) appropriately respond to the CSLB's investigation and disciplinary actions; (3)

**United States District Court**
For the Northern District of California

1  timely designate a new employee on the C-33 license during and after cessation of Giosso's

2  employment; (4) notify Giosso during the pendency of the CSLB action; and (5) continue to

3  cooperate with the CSLB after Owens Corning ceased operation of HOMExperts. Id. ¶ 34.

4      Giosso concedes that Owens Corning is entitled to summary judgment as to the third

5  alleged breach of duty – failure to timely designate a new employee on the C-33 license –

6  because there is no genuine dispute of material fact regarding whether Owens Corning timely

7  designated a new employee on the C-33 license after Giosso left Owens Corning. Opp'n to

8  Mot. for Summ. J. (dkt. 37) at 25. Giosso asserts that there are genuine disputes of material

9  fact as to each of the remaining four alleged breaches of duty. Id. The Court concludes that

10  there are disputes of material fact as to the second (appropriately responding to the CSLB

11  investigation and disciplinary action), fourth (notifying Giosso of the actions), and fifth

12  (cooperation with the CSLB) claimed breaches but not the first (failure to stop work after

13  Giosso left Owens Corning's employ).

14                                          * * *

15      Owens Corning argues that, at most, it had a duty to respond to the customers'

16  complaint and that it discharged that duty by obtaining a global release of their claim. Mot.

17  for Summ. J. (dkt. 34) at 13. Owens Corning claims it did not have a duty to defend Giosso

18  in the CSLB proceeding "or to otherwise respond to or monitor the proceeding on his

19  behalf." Id. In support of its position, Owens Corning cites Grissom and Cassady v.

20  Morgan, Lewis & Bockius LLP, 145 Cal. App. 4th 220, 238 (2006).

21      Owens Corning is right that it did not have a duty to defend Giosso. Grissom, 1 Cal.

22  App. 4th at 57 ("Section 2802 does not say that an employer must 'defend' an employee.

23  The word 'defend' does not appear in section 2802."); Cassady, 145 Cal. App. 4th at 237-38

24  ("[A]s Grissom reasoned, section 2802 does not expressly include a requirement to defend; it

25  speaks only in terms of indemnification."). But Owens Corning admits that it nevertheless

26  voluntarily assumed the duty of defending Giosso. "Owens Corning retained an attorney to

27  defend Giosso both with respect to the [customers'] claim and with respect to the CSLB

28  accusation. Attorney Berrigan diligently attempted to resolve all claims against Giosso."

United States District Court
For the Northern District of California

Mot. for Summ. J. (dkt. 34) at 13.  See also Benson v. Superior Court, 185 Cal. App. 4th 1179, 1187 (2010) ("'[A] duty can have three alternative origins:  (1) a duty imposed on the defendant by law, (2) a duty assumed by the defendant, or (3) a duty arising out of a preexisting relationship between plaintiff and defendant.'") (emphasis added) (quoting Aguirre-Alvarez v. Regents of Univ. of Calif., 67 Cal. App. 4th 1058, 1063 (1998)).

Even though it assumed a duty to defend Giosso with respect to both the customers' complaint and the associated CSLB proceedings, Owens Corning argues that it cannot be held liable for allegedly negligent management of that defense.  In support of its argument, Owens Corning relies principally on Merritt v. Reserve Ins. Co., 34 Cal. App. 3d 858 (1973).  Owens Corning is right that it cannot be held liable for the negligence of the lawyer it retained to defend Giosso, but summary judgment is still improper.

Merritt involved an insurer that retained counsel to defend an insured.  The California Appellate Court held that "vicarious liability" does not fall "on one who retains independent trial counsel to conduct litigation on behalf of a third party when retained counsel have conducted the litigation negligently."  Id. at 880; see also Grissom, 1 Cal. App. 4th at 60 n.5 ("A cause of action against an employer for indemnity under Labor Code section 2802 does not, however, encompass damages allegedly sustained by an employee arising out of the malpractice of counsel provided by the employer. The employee's remedy is against the counsel, who works as an independent contractor, not against the employer who initially hires that counsel.") (citing Merritt, 34 Cal. App. 3d at 881-82).  However, Merritt does not absolve a party with a duty to defend from all responsibility upon retention of independent counsel.  Rather, it protects the delegating party for liability from "[t]he conduct of the actual litigation, including the amount and extent of discovery, the interrogation, evaluation, and selection of witnesses, and employment of experts, and the presentation of the defense in court . . . ."  Id. at 882.

Taking the facts in the light most favorable to Giosso, there is a material dispute of fact as to whether Owens Corning acted without negligence in connection with its assumed duty to defend.  For example, Giosso has set forth evidence that Owens Corning failed to (1)

United States District Court
For the Northern District of California

1   provide Giosso timely (or any) notice that a claim affecting his license had been made or (2)

2   properly respond to CSLB inquiries.  Giosso Decl. (dkt. 40) ¶¶ 23 ("I never received notice

3   about this matter from Owens Corning . . . ."); 25 (Owens Corning failed to timely respond to

4   the customers' complaint); 26 ("There was a letter written by Mr. McCord (the RME for

5   Owens Corning) wherein he promised (prior to the formal accusation) Mr. Bell, the CSLB

6   investigator, that he would resolve the [customer] matter."); 27-28 ("After Owens Corning

7   decided to cease all HOMExperts operations, Mr. Bell, the CSLB investigator, testified at the

8   CSLB hearing and as contained in his investigation report, sent a letter to Mr. McCord, as the

9   RME for Owens Corning requesting an update[d] status in the resolution of the [customer]

10  matter.  Mr. McCord advised the CSLB investigator (April of 2007) that HOMExperts was

11  no longer in business, and referred him to corporate counsel at the home office . . . .  That led

12  to the CSLB filing a formal accusation . . . .") (citations omitted); Licensee Investigation

13  Report (dkt. 38-8) at OC000658-659 ("McCord's letter [of November 20, 2006] stated that

14  Homexperts would secure required permits for the subject project and make required code

15  corrections (Exhibit #15).  Homexperts did obtain a permit but never made any corrections.")

16  (emphasis added).

17       Taking the facts in the light most favorable to Giosso, there is a dispute of material

18  fact as to whether Owens Corning acted negligently with respect to its assumed duties

19  associated with furnishing Giosso a defense.[7]

20       However, Owens Corning is entitled to summary judgment to the extent the

21  negligence claim is based on (1) Owens Corning's alleged failure to stop work after Giosso

22  left and (2) the conduct of the lawyer Owens Corning retained.  Owens Corning timely

23  _____

24       [7] Owens Corning asserts that Giosso cannot have been damaged by its handling of the defense
     of the CSLB proceeding because the outcome he got was the same one he rejected.  Mot. for Summ. J.
25  (dkt. 34) at 13.  This argument ignores Giosso's evidence that, had Owens Corning acted diligently, the
     CSLB proceedings would have been dismissed.  Giosso Decl. (dkt. 40) ¶¶ 27-28 ("After Owens Corning
26  decided to cease all HOMExperts operations, Mr. Bell, the CSLB investigator, testified at the CSLB
     hearing and as contained in his investigation report, sent a letter to Mr. McCord, as the RME for Owens
27  Corning requesting an update status in the resolution of the [customer] matter.  Mr. McCord advised the
     CSLB investigator (April of 2007) that HOMExperts was no longer in business, and referred him to
28  corporate counsel at the home office in Toledo, Ohio.  That led to the CSLB filing a formal accusation
     . . . .") (emphasis added).

**United States District Court**
For the Northern District of California

1   complied with its obligation to replace Giosso as RME on the C-33 license after his

2   departure.  Any liability in connection with the furnishing of a defense must flow from

3   Owens Corning's own failure to act reasonably with respect to its assumed duty to defend.

**E.      Disputes of Fact Preclude Summary Judgment on the Conversion Claim**

5         Giosso's final cause of action is for conversion.  FAC ¶¶ 37-43.  The basis for the

6   claim is that Owens Corning "converted" Giosso's C-33 classification by using it without his

7   permission and, in so doing, generated over $25,000,000 in gross revenue.

8         Owens Corning made three arguments in favor of summary judgment as to Giosso's

9   conversion claim.  First, that "California law does not recognize a property interest in a

10  business license such that a license can be subject to a conversion claim."  Opp'n to Mot. for

11  Summ. J. (dkt. 34) at 14.  Second, that, if California does recognize a property interest in a

12  business license, Owens Corning, not Giosso, was the lawful owner of the C-33

13  classification.  Reply (dkt. 41) at 11-12.  Third, that, even if Giosso has a property interest in

14  the C-33 classification, the conversion claim fails "because Owens Corning did not convert

15  any property interest . . . ."  Opp'n to Mot. for Summ. J. (dkt. 34) at 14.

**1.      The C-33 Classification is Property That Can Be Converted**

**a.      Contractor's Licenses Are Property**

18        There is no authority in California directly addressing whether a license like the one at

19  issue here is "property" that can be converted.  In the Court's view, a contractor's license <u>is</u>

20  property that can be converted.

21        The Supreme Court of Nevada recently reached a similar conclusion.  <u>M.C. Multi-</u>

22  <u>Family Dev., L.L.C. v. Crestdale Assocs., Ltd.</u>, 193 P.3d 536 (Nev. 2008).  In that case, a

23  majority interest member of a real estate developing company brought an action against a

24  minority interest member alleging, among other things, conversion as a result of the minority

25  interest member using the company's license for independent projects.  The Nevada Supreme

26  Court, relying on California's definition of "property rights," held that "the use of a corporate

27  contractor's license by an individual for independent projects, without the permission of the

28  entity named in the license, may constitute a conversion when the license is the exclusive

**United States District Court**
For the Northern District of California

1  property of the individual or entity to which it is issued." Id. (citing Kremen v. Cohen, 337

2  F.3d 1024 (9th Cir. 2003) (a property right exists when (1) there is an interest capable of

3  precise definition, (2) the interest is capable of exclusive possession or control, and (3) the

4  putative owner has established a legitimate claim to exclusivity)).  Further, the Nevada

5  Supreme Court noted that, although "unauthorized use of a contractor's license does not

6  involve an actual physical appropriation or 'taking[,]' . . . it nonetheless may constitute an act

7  inconsistent with the rights of the titleholder . . ." Id. at 554.

8         This Court agrees with the reasoning of M.C. Multi-Family Development and thus

9  concludes that it is possible to convert a contractor's license under California law.  Cf. G.S.

10 Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc., 958 F.2d 896 (9th Cir. 1992)

11 (engineer stated valid claim for conversion under California law based on alleged misuse of

12 his Supplemental Type Certificate, a "license" authorizing him make certain modifications to

13 planes to enhance cargo capacity, and noting "[t]hat [the fact that] the interest in question is

14 limited to obtaining a governmental privilege, and a federal one at that, does nothing to

15 diminish its status as a property interest for purposes of state law.") (citing Golden v. State,

16 133 Cal. App. 2d 640, 643-45 (1955) (holding that a state liquor license is property under

17 California law)).

18               **b.      Giosso Owned the C-33 Classification**

19        In its Reply, Owens Corning argued that the classification at issue was Owens

20 Corning's and not Giosso's.  Reply (dkt. 41) at 11 ("Owens Corning was the lawful owner of

21 the C-33 classification of its contractor's license.").  The Court disagrees.

22        It is undisputed that Owens Corning was the lawful owner of license number 784023.

23 But the fight here concerns Owens Corning's use in connection with license 784023 of

24 Giosso's C-33 classification for painting and decorating.  Giosso Decl. (dkt. 40) ¶ 7

25 ("HOMExperts\Owens Corning needed my C-33 license to accommodate the current

26 contracts that HomeFinishes had with large painting jobs for homebuilders already in

27 production.") (emphasis added); ¶ 8 ("A State Contractor's License is a personal right and

28 responsibility.  I have to post and maintain a bond of $15,000 with the license.  The C-33

17

United States District Court
For the Northern District of California

license allows me to perform paint and decorating services in California."); ¶ 9 ("[I]t was the sheer size of HomeFinishes Paint Division that made it necessary for Mr. Stein to request the use of <u>my</u> C-33 license.") (emphasis added); ¶ 11 ("The purpose of lending them <u>my</u> license . . . .") (emphasis added); ¶ 26 ("[The disgruntled customers] made a claim against <u>my</u> bond on <u>my</u> C-33 license . . . .") (emphasis added).  Owens Corning's own employee described the C-33 classification as <u>Giosso's</u> license.  Stein Depo. Tr. (dkt. 38-1) at 11:5-6 ("I know that we used <u>his</u> contractor license.") (emphasis added); 11:15-17 ("I know we needed a license to do work in California, and I know <u>he</u> had a license to do work in California.") (emphasis added); 11:19-20 ("I know we used <u>his</u> license to do work in California.") (emphasis added).

Further, that the C-33 classification was <u>Giosso</u>'s is reflected in the fact that the CSLB proceeded against <u>him</u> even after Owens Corning closed HOMExperts and got out of the business, the customers' complaint was settled, and Giosso was working for a different company.  <u>See</u> Giosso Decl. (dkt. 40) ¶ 21-23, 28 ("That led to the CSLB filing a formal accusation . . . against every license associated with Owens Corning, including <u>my</u> licenses, which were then associated with Conxtech and my independently owned company . . .") (emphasis added).[8]

**2.      There is a Dispute of Material Fact as to Whether Owens Corning Converted Giosso's C-33 Classification**

Owens Corning argues that, even if a C-33 classification can be converted, Giosso has failed to set forth facts that would enable a jury to rule in his favor.  Again, the Court disagrees.

Owens Corning claims that Giosso "consented to Owens Corning's use of the C-33 license" "[a]t all times during his employment[.]"  Mot. for Summ. J. (dkt. 34) at 14.  In support of this argument, it asserts two allegedly undisputed facts.  First, that Giosso signed a Renewal Application for the C-33 classification in 2004, belying any assertion that he placed

---

[8]   Owens Corning argues that it makes no sense to say that individual RME's "own" classifications associated with an overarching corporate contractor's license.  That may well be true in the situation where a corporate employee obtains a classification as part of his or her employment and the company then uses that person as the RME.  But this is a different situation.  Here, Giosso has presented evidence that he reached a separate agreement regarding the use of his classification that he obtained before joining Owens Corning.

United States District Court
For the Northern District of California

1  a limit on Owens Corning's use of it.  Second, that he "admitted during his deposition that he

2  never had a conversation with anybody at Owens Corning that there would be a limitation on

3  use of the C-33 license."  Mot. for Summ. J. (dkt. 34) at 14 (emphasis in original) (citing

4  Giosso Depo. Tr. (dkt. 35-2) at 53:12-56-2).

5          With respect to the Renewal Application, Owens Corning ignores Giosso's evidence

6  that (1) he did not recall signing the Renewal Application and did not recognize it, id. at

7  126:13-126:15; (2) the Renewal Application is for Owens Corning's entire license and does

8  not specify that Giosso's C-33 classification was being used as to opposed to someone else's

9  C-33 classification, id. at 126:16-126:21 and Ex. 11; and (3) Giosso did not believe in 2004

10 that he was on the Owens Corning license and, assuming he signed the document, he did so

11 with that understanding, id. at 127:15-127:22.  This Court cannot resolve the factual dispute

12 as to what understanding existed between the parties as to the use of Giosso's C-33

13 classification.  A jury will have to decide whether Giosso's explanation with respect to his

14 signature on the Renewal Application is credible.[9]

15         Likewise, Giosso's claimed "admission" that he never placed a limit on the use of his

16 C-33 classification does not tell the whole story.  Although Giosso "admitted" during his

17 deposition that he never placed a limitation on the type of work that could be done with his

18 C-33 classification,[10] he also said that Owens Corning's use was supposed to be temporary.

19

20    [9] Owens Corning also notes that, in August 2003, 10 months after he started working for Owens
   Corning, Giosso signed an Application for Additional Classification designating himself as the RME
21 on a C-33 classification.  Application for Additional Classification (dkt. 38-2) at OC0002248-2249;
   Giosso Decl. (dkt. 40) ¶ 8 ("I recognize my signature on the original application for my C-33 RME
22 designation in CLSB [sic] documents dated April 16, 2003 and August 30, 2003").  Owens Corning
   argues that this also shows that there was no temporal or other limitation on its designation of Giosso
23 as RME as to the C-33 classification.  Reply (dkt. 41) at 12.  There is certainly a tension between
   Giosso's assertion that he limited the use of his C-33 classification to a period of a few months and the
24 Application for Additional Classification signed in August 2003.  But as with the Renewal Application,
   a jury will have to resolve whether this documentary evidence undercuts his testimony regarding the
25 agreement that Owens Corning's use of his C-33 classification would be temporary (i.e. until he could
   be replaced by Gene McCord).
26

27    [10] In his deposition, Giosso responded "No" when asked, "When you agreed to serve as the C33
   RME did that conversation with Mr. Stein, did you disclose to Mr. Stein the additional requirement
28 that your license could only be used on existing new tract construction, and not for future new home or
   residential remodeling projects?"  Giosso Depo. Tr. (dkt. 35-2) at 54:6-54:12.  In his Declaration,
   however, Giosso asserts that "I only agreed to be responsible for the existing painting contracts that

19

United States District Court
For the Northern District of California

1   Id. at 50:15-17 ("I agreed to [] act as a C33 on a short period of time, until Gene McCord

2   took the license, which I thought would be months."); 52:6-55:12 (Q. "[D]id you make any

3   qualifications regarding being the designee for the C33 license?  A. Yes, only that my

4   understanding it was going to be temporary.  Q.  Did you request that it be temporary?  A. I

5   just clarified it would be temporary . . . .") (emphasis added); 54:6-17 ("It was a temporary

6   use of the license until Gene McCord retained the license.  That was the limitation.")

7   (emphasis added); see also Giosso Decl. (dkt. 40) ¶ 7 ("Mr. Stein approached me the week

8   prior to the closing of the sale of HomeFinishes and asked me to agree to act temporarily as

9   the RME (Responsible Managing Employee) for the C-33 painting and decorating license. . .

10  . . Mr. Stein further told me that for Owens Corning to be able to continue the business

11  operations of painting and to complete the purchase of HomeFinishes, I would need to act, on

12  a temporary basis, as the 'RME' for the C-33 license while Mr. McCord conducted the

13  application process to obtain the C-33 license.") (emphasis added) ¶ 9 ("I only agreed to act

14  as the RME until Mr. McCord, or another Owens Corning employee, could get a C-33

15  license. . . . . I expected Mr. McCord's application and approval would have taken no more

16  than six months."); ¶ 11 (only "[b]ecause the use of the license was going to be temporary . .

17  . did [I] not negotiate or receive any compensation of any kind from Owens Corning at any

18  time for acting as the RME on the C-33 license.") (emphasis added); ¶ 40 ("I never consented

19  to Ownes Corning's continued use of my license."); see also id. ¶ 17 ("When I joined

20  Conxtech, I became an RMO (Responsible Managing Officer), which required me to fill out

21  paperwork and an application to the CSLB.  Had I known my C-33 license was still being

22  used by Owens Corning, I would have simply dissociated myself from Owens Corning at the

23  time I was applying to be the RMO of Conxtech.") (emphasis added).

24

25

26  were assigned to HOMExperts at the time of the acquisition of HomeFinishes."  Giosso Decl. (dkt. 40)

27  ¶ 40.  Because Giosso cannot create a dispute of fact by directly contradicting prior testimony, his
    admission that he placed no limitation on the use of C-33 classification other than a temporal one
    entitles Owens Corning to summary judgment to the extent the conversation claim is based on alleged

28  use of the classification for types of work Giosso did not contemplate.  See Kennedy, 952 F.2d at 266;
    Villiarimo, 281 F.3d at 1061.

1    Thus, contrary to Owen's Corning description of the facts, there is a dispute as to

2  whether Giosso reached an agreement with Owens Corning that the use of his C-33

3  classification was going to be indefinite (Owens Corning's view) or temporary (Giosso's

4  view).

5    Accordingly, because there is a dispute as to whether Owens Corning used Giosso's

6  C-33 classification beyond the period Giosso claims he agreed to allow its use, there is a

7  dispute as to whether Owens Corning converted his classification.  Thus, summary judgment

8  on Giosso's conversion claim is DENIED.[11]

9  **IV.    CONCLUSION**

10    There is a genuine dispute of material fact as to whether Owens Corning used

11  Giosso's C-33 classification beyond the period to which he agreed.  There is also a genuine

12  dispute of material fact as to whether it was "necessary" for Giosso to obtain his own counsel

13  to defend the customers' complaint and associated CSLB proceedings and whether it

14  continued to be necessary to proceed with that counsel and reject the settlement offered by

15  the CSLB.  These two overarching disputes compel the denial of summary judgment as to

16  Giosso's claims for indemnification under section 2802, negligence in count four, and

17  conversion, except as otherwise stated.

18    **IT IS SO ORDERED.**

21  Dated: May 10, 2011                   _____

                                        CHARLES  R. BREYER
                                        UNITED STATES DISTRICT JUDGE

---

26    [11]  To the extent Giosso's conversion claim is based on Owens Corning's alleged failure to
      designate a replacement RME when he left Owens Corning's employ, summary judgment is GRANTED

27  in Owens Corning's favor.  Giosso has conceded that Owens Corning substantially complied with its
      obligation to replace Giosso as RME after he left Owens Corning.  <u>See</u> Opp'n to Mot. for Summ. J. (dkt.

28  37) at 5 ("Plaintiff concedes the allegation that defendant failed to timely designate a replacement on
      his C-33 license; that allegation shall not survive.").